This is a case in which the District Court facially and categorically erred in its legal analysis of whether Mr. Tostado-Cadenas merited a minor role adjustment under Section 3B.1.2b of the Sentencing Guidelines. The District Court did not follow any of the three parts of the test that this Court set out in a series of cases beginning with Quintero-Leyva and then moving six years later to Dominguez-Caicedo and then the successor case to Dominguez-Caicedo, Chande. Let me read, because I think this is illustrative of this particular District Judge's view of Section 3B.1.2b from his excerpts of his analysis, which appears at ER 143-144. The District Court said to Mr. Lee, my opponent, so I don't know if you want to respond further, but I'm just saying they're all in this together and I don't regard anybody as, take it to the Ninth Circuit if you want. They seem to like to make these distinctions between minor, minimal leaders and others. They're all in it together. And then he later says, gangs, drug dealers, they're not like that. It doesn't work that way. Everybody does a little bit of everything. So if you want to take it to the Ninth Circuit, I would like to hear them respond. This Court, as Quintero Leyva set forth, as Dominguez-Caicedo set forth, vacates and remands when a District Court does not follow this particular framework under Section 3B.1.2b. And so I know that the government has made a variety of arguments that we've addressed in our reply brief to try to get around what I think anyone would recognize as facially deficient analysis by the District Court. Counselor, can I ask, would we apply, assuming we agree with you that the District Court did not apply the analysis and the sentencing guidelines and the factors that were required, do we apply harmless error analysis to that or no? Because I have questions about Mr. Tostado's role in this case and whether he might be substantially less culpable than the average participant. But would we get to that or do we not? You would get to that, Your Honor, in a way that the government, in a way that is different from what the government specifies. The government seems to suggest that this is conventional harmless error analysis in which you simply look to whether the legal errors were irrelevant, that the District Court would not have given a minor rule adjustment regardless. And that's simply not how this court has applied harmless error in the sentencing guidelines context. Isn't this a legal error? It's not. It's a legal error because it's a classic procedural violation under all of those cases we came up with after we decided that the guidelines were discretionary, not mandatory. But we said the first thing you have to do is correctly calculate the guidelines. Here, the District Court did not correctly calculate the guidelines because he refused to follow this particular guidelines because he had a different view about how drug conspiracies work. And so how can any error in refusing to correctly calculate the guidelines be harmless under this framework that we've developed since Justice Scalia convinced everybody that the guidelines can't be mandatory? If you refuse to apply them, that's the first, that's procedural error. It's not a substantive error, but it's a procedural error. I don't know how it can be harmless. This is the procedure you're supposed to follow. Your Honor, I agree with everything you've said. And to finish up my response to Judge Sanchez's questions, harmless error in the sentencing guidelines context operates in this way, that the appellate court, the Federal Court of Appeals, looks to whether it is probable that the same sentence, the same sentence length, the same custodial sentence length would have been imposed by the District Judge but for the guidelines error. Here, that is not correct because the very error that the District Court made in not imposing a minor role adjustment made a four guidelines level difference. He sentenced based on an adjusted base defense level of 33. If he had applied 3B1.2b, that would have taken it down to 31. And then there was an additional, at the time, under the 2024 Guidelines Manual, there was an additional two-level adjustment under Section 2B1.b.18. So that would have resulted in an adjusted base offense level of 29. The range would then have changed from 135 to 168 months to 87 months to 108 months. So this was an error in our estimation that had material impact potentially on the sentencing. And Judge Wardlow is entirely correct. The touchstone for this type of analysis is whether the sentencing guidelines range was correctly calculated. Is there any problem over the fact that the objections to the PSR counsel didn't or, you know, Mr. Tostado didn't assert who the average participant might be or get into any of those factors? I mean, you don't have to cite the cases, but it didn't guide the court in a certain direction in applying the factor, unlike other cases where those issues are extensively briefed in advance to the District Court. I don't think it's an impediment, Your Honor, because he asserted his general claim and articulated that he was substantially less culpable than the average participant in this crime, which is the standard that this court has required ever since Quintero Leyva at the earliest. And so I don't think that his necessarily articulating every single bit of the legal analysis that this court has required since Quintero Leyva, since Dominguez-Casello, and in Chiconde. I don't think that's an impediment to to this court vacating and remaining when, as Judge Wardlow noted, there was a essentially a categorical refusal by the District Court to apply any of those factors. Could you please take me again to your argument as to why the normal harmless error standard doesn't apply here? We have a situation where your client got about 40 percent of the methamphetamine that was to sell and got a firearm as part of the deal. So why is the sentence imposed by Judge Shub regardless of his disregard for the Ninth Circuit, which we see in the transcript? Why is that not harmless error in these circumstances? I would disagree first, Your Honor, with the statement you made regarding the record facts. The methamphetamine that was brought to Rippon, California on March 3rd, 2022, was 17 kilograms. The overall intended sale per the Rule 11B3 statement was, I believe, 115 kilograms. So it wasn't a substantial amount, but it wasn't up 40 percent. I got pounds and kilograms mixed up. And second, Your Honor, the District Court specifically found that the government had not proven that Mr. Tostado-Cadenas provided the firearm to Mr. Quintero. Mr. Quintero said so. Page 51. Mr. Quintero told that to Special Agent Falls. District Court determined, based on a double hearsay impediment, the translation from Spanish of Mr. Quintero's statement to Mr. Mr. Tostado-Cadenas testified during the same evidentiary hearing that he did not provide the firearm to Mr. Quintero and Mr. Hinojosa-Neja. And so, as a result, the District Court decided that my client, Mr. Tostado-Cadenas, was safety valve eligible and also was eligible for the zero-point guidelines, two-level adjustment downward under the zero-point guidelines, Section 4C1.1. So there is quite a bit in this record, Your Honor, that would suggest that on remand, under a proper analysis, Mr. Tostado-Cadenas would have a substantial analysis, a substantial chance to prove that he was substantially less culpable than average participant in this particular criminal offense. And so, and that's precisely what happened in Dominguez-Casello, Your Honor. Chiconde was the follow-up case to that because Chiconde was the co-appellant in, and I think, I believe I'm over time. You're running a little over time, but we'll give you a little time for a rebuttal. Thank you so much, Your Honor. Okay. Chiconde was the defendant whose sentence was vacated in Dominguez-Casello. The harmless error analysis in that case did not focus on whether it was likely that he, under a proper analysis, would have received a substantial, a role reduction, a minor role reduction under Section 3B1.2b. And on remand, the District Court declined to give a minor role adjustment conducting the proper analysis. This Court then affirmed. So that is the proper procedure we would submit. Okay. Remand, resentencing, so that the District Court can assess under the proper legal framework. Thank you. Thank you very much, Your Honor. May it please the Court, Justin Lee on behalf of the United States. I'll start with the Court's question. Yes, Judge Sanchez, under this, Court should review for harmless error if the Court finds it necessary to. That's appropriate. The Court in Dominguez-Casello specifically addressed that harmless error was appropriate in the case of a sentencing-based error. The standard is more probable than not that the sentence would have been the same. And here, the sentence would have been the same. Even for a procedural violation? Even for a procedural violation, Your Honor, there's not a procedural violation here in the first instance because Judge Shubb did the analysis that this Court said that he has to do in Dominguez-Casello. Specifically, at ER 142, Judge Shubb looked at the other participants in this offense. He looked at the co-defendant Curiel. He looked at Tostado. He looked at the briefing and referred to Quintero and the others that were similarly situated. I mean, I have to say, Counsel, it's kind of hard to buy that argument given the District Court's comments that seem to suggest that no one in a drug conspiracy should be eligible for a minor rule reduction, that everyone's in it together. I mean, don't his statement suggest that he was not predisposed to granting a minor rule reduction in the context of a drug conspiracy? No, Your Honor, and that's for two reasons. The first reason is the District Court's statement of frustration came after the analysis that's on ER 142. But there's hardly an analysis. I mean, one of the threshold questions is, who are the participants to this transaction? And I've been scratching my head about that because we know about Mr. Tostado. We know Quintero. But there were several other people that arrived at the scene, five cars that left. We know almost nothing about them. We know almost nothing about who Mr. Tostado called other than Mr. Quintero. Even at a baseline level, the Court didn't really engage in those threshold inquiries of who's involved, who's the average participant, what was going on in this case. The mere mention of a couple of people seems far afield from what the factors require him to analyze. Your Honor, there were six participants that were identified in the PSR. That's on paragraph 7 through 11. Those were referenced in the government sentencing brief. And it was also, the District Court alluded to them Quintero. But what do we know about them? Did they bring meth to the place? They weren't apprehended, so I don't think we know that, do we? The only people that are referenced in the PSR are the people that were contacted by law enforcement. Those were six individuals. There were other cars that made it out of the parking lot that presumably had occupants that were not contacted. There's no indication about whether there were drugs in the car or not. So how do we get to a place of who the average participant might be if there's not that much clarity about who the participants are in the first place? So if Judge Shub didn't mention them, how do we know that he was incorporating them into an analysis of who an average participant might be? I have two answers to that, Your Honor. First, Judge Shub doesn't have to specifically say out loud that he has considered the factors or how he has done the analysis. Courtney Diaz said the District Court is presumed to know the law and follow the law and doesn't need to specifically state it out loud. Counsel, this judge said, I'm not going to follow this law. His whole idea of role in the offense was made up by people who don't understand what these crimes involve. So I'm not giving him a deduction for role in the offense. And I don't even understand what he was saying because I think he thinks that everybody who's involved in a drug conspiracy is equally culpable. And that's just not the case. And maybe he thinks he knows more about drug conspiracy than say a judge like me who's been on the District Court and Court of Appeals for 30 years. But I'm sorry, that's not correct. And I think I am worried about even sending this back to him for resentencing because he's just refusing to give a mitigating role to anyone without identifying the conspiracy, the roles in the conspiracy. And I think most of your prosecutor, right? Most of us know that the people who are the people are usually at the bottom of the conspiracy are the ones that get caught, because they're the ones who are tasked with actually doing the thing that the people at top don't want to be doing because they don't want to go to jail and they're willing to let the lower guys get caught and go to jail. And I just think that we, the sentencing guidelines have these roles for a reason. And certainly the Sentencing Commission knows what it's doing in articulating these roles. And so to have a judge say, I'm just not going to apply this, I don't see how that can be harmless. Your Honor, the District Judge's statement about I'm not going to give the role adjustment in this case came after the District Court conducted an evidentiary hearing and after the District Court did analysis of the relative culpability of Curiel and Tostado. And importantly, Curiel and Tostado were the only people that Tostado recommended that the court considered. It was a tactical decision by Tostado to focus the inquiry on two defendants for purposes of not considering the other less culpable people that were involved in the offense. I'm sorry to interrupt, Mr. Lee. I'm looking at ER 142, which you've referenced as that he made a comparison analysis before that comment of frustration as you characterized it. I don't see him making an analysis. I think he's reflecting some uncertainty in the government's position. Because on ER 142, it says, interestingly, the government seems to have conceded in its brief that Mr. Tostado Cadenas was not as culpable as Mr. Curiel. But looking at your testimony from Mr. Falls, the special agent, he made the assumption that it was Mr. Tostado that was a supplier and Mr. Curiel was just a broker. So even on the government side of the case, it's not clear who they think is the most culpable. And then he references you in your briefing. Is that where you posit that the court was doing a comparison between people? Because I'm just reading him to observe what he thinks the government's position happens to be. Yes, Your Honor. That is what I'm pointing to. A fair read of that is the district court is grappling with the relative culpability. And he's grappling with that in the sense of what the district court observed at the evidentiary hearing was different than the argument advanced by the United States. The United States took the position that Curiel was the most culpable. The district judge, after conducting the evidentiary hearing, clearly believed that Curiel was not the most culpable, that Tostado was more culpable than Curiel based on his view of the testimony of Special Agent Falls. Going back to your question, Judge Sanchez, about the other potential people involved, this court has counseled that district courts are not to consider hypothetical defendants. The only potential participants that were identified in this case were the six that were in the PSR that were identified. Those are the six participants that the parties knew about and that the district court could conduct an analysis and do a relative culpability analysis to say, is the defendant substantially less culpable than the average participant? And importantly, Remand in this case would be futile because there is no scenario in which this particular defendant would warrant the two-level minor role adjustment. He has not, in his opening brief or in his reply brief, even attempted to argue that he is entitled to this minor role adjustment. I see that my time is running out. If there are no further questions. No questions. Thank you. Address counsel's last comment that you haven't argued that he's entitled to a minor role adjustment. We certainly have not waived that argument, Your Honor. Referencing Judge Wardaw's concerns, this was an acute procedural defect in the analysis itself. And so there's certainly been no waiver, first of all. Second, it's not futile because Amendment 833 to the Guidelines Manual added a special instruction that now appears in Section 2D1.1E2. That went into effect on November 1st, which was after sentencing. And that gives now two tracks for a defendant to seek a minor role adjustment. The conventional one that we've been discussing today and a new one that says in E2B, in addition to the circumstances identified in Section 3.1.2, an adjustment under Section 3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function. So it's an entirely different standard now that district courts can consider on a second track in determining whether this minor role reduction is applicable. So we absolutely disagree that this would be futile. Addressing Judge Wardaw's concern about whether it would be appropriate to remand so that Judge Shub specifically can resentence, I would note that this Court has in a variety of cases. One that I would mention is United States v. Quok, Q-U-A-C-H, 302-530-1096, pinpoints at 1104, 2002 case from this Court. This Court has remanded for resentencing before a different district judge if it feels a need to, quote, the appearance of justice. We didn't specifically ask for this as a remedy in our briefing, but given Judge Wardaw's concerns and given my thinking about this case, it is something that we would be comfortable with if this Court were to decide. I see that I'm over time. If there are no further questions, I'd be pleased to submit. No other questions. Thank you, counsel. Thank you both for your helpful arguments. The matter will be submitted and Court is adjourned for the day. All rise.
judges: WARDLAW, BEA, SANCHEZ